{¶ 1} Defendant-appellant, Joseph C. Hammond, was indicted by the Franklin County Grand Jury on one count of rape, a violation of R.C.2907.02. The charge of rape involved an incident involving a five year old child, "R.F." Following a jury trial, appellant was found guilty. The trial court imposed a life sentence and found appellant to be an aggravated sexual offender.
 {¶ 2} Appellant filed a timely notice of appeal and assigns the following assignments of error: *Page 2 
 First Assignment of Error
 Appellant's conviction is not supported by sufficient evidence.
 Second Assignment of Error
 Appellant's conviction is against the manifest weight of the evidence.
 {¶ 3} Following a competency hearing, R.F. testified to the following. R.F. was five years old in July 2006. (Tr. 49.) R.F. testified that she knew appellant and that she had gone to Magic Mountain with him that summer. (Tr. 49, 51.) The night before a family reunion, R.F. spent the night at appellant's house for a sleep over with her cousins, Elias and E.J. (Tr. 52-53.) In the morning, appellant helped Elias and E.J. get a shower. Then, appellant helped R.F. get her shower. (Tr. 54.) When asked if anything happened before her shower, R.F. responded as follows: "[h] e put his pee pee on mine," and indicated that it hurt. (Tr. 55-56.) R.F. testified that this took place on the floor in the bedroom. She testified further that she knew her "pee pee" was her vagina and that appellant's "pee pee" was his penis. (Tr. 55-56.) After that, appellant helped R.F. take her shower. (Tr. 56.)
 {¶ 4} Detective Kevin Foos from the Franklin County Sheriff's Office interviewed appellant regarding the above allegations on July 12, 2006. Detective Foos testified that he reviewed the constitutional rights waiver form with appellant, made sure that he understood it, and that appellant waived his right to an attorney. (Tr. 65-68.) Detective Foos also testified that he did nothing to encourage, threaten, or coerce appellant in any way. (Tr. 70.) Appellant made a written statement which was attached as exhibit B. Appellant first wrote out the following statement:
 On the day in question, I was the one giving all 3 kids a shower. I gave E.J. and Elijah their showers, with no *Page 3 
problems. Now with [R.F.], I thought that my wife should give her a shower. However since we were in a hurry and she was my cousin, I did. I did so out of the love of my heart, wanting to make sure that she along with [the] boys were clean and didn't smell bad at our family reunion. I am sorry for anything that may have been misconstrued as inappropriate. I would never hurt my family purposefully in anyway, malicious or not.
 {¶ 5} Thereafter, Detective Foos asked appellant to expound on the above statement and appellant wrote the following:
 But on the day in question I for some unknown reason did what something in my head told me to. While getting [R.F.] ready to get in the shower, I did have her lay on the air mattress and proceed to have sex with her. It at first started out as just a visual check for fecal matter to see if we needed to pay extra attention to her behind as I have to do with Elijah. That's when something in my head said go for it have sex with her. However, while doing so I realized what I was doing and immediately stopped. I took [R.F.] into the bathroom and gave her a shower just as I did with E.J. before her and Elijah after. After the shower for the kids, it was my turn. When I was done with my shower we went to the Family Reunion[.] [O] nce at the family reunion we ate, played games, then went home. I don't know what made me do this bad thing to a little girl who I care for so deeply as a part of my extended family, but I can assure whoever may read this document that I will never do anything of this nature again. Also to be sure that I never do it again, I would like to formally ask for help with my problem. So I may put this part of my life behind me and be there for my wife and our unborn child, as well as apologize and make amends for what I've done. I am not an evil person, I just made a really bad mistake and would like to do what I can to help make [R.F.]'s time from here on as good as it can be, without anymore problems such as the one in question. I truly am sorry and wish I could go back to that moment in time, so that I could tell myself not to go through with it so that a little girl's life wasn't ruined. But now I have ruined both of our lives and neither one of us will ever be the same. Again, I did not set out to hurt [R.F.], something told me to and unfortunately I listened. I am very, very sorry. *Page 4 
 {¶ 6} Detective Foos also videotaped appellant and appellant essentially reiterated the above statements orally. This recording was played for the jury. (Tr. 78-88.) During that interview, appellant specifically stated that he had "sexual intercourse with [R.F.] on the air mattress," and that, "while she was laying on the air mattress, I took and I lifted up the leg of my shorts and proceeded to enter my penis into her vagina." Appellant stated that his penis "barely went in." (Tr. 86.) And, when asked how many times he thought he put his penis into her, appellant responded as follows: "I don't know, two or three." "Maybe three or four, but then I finally realized what I was doing, and I stopped." (Tr. 87.)
 {¶ 7} Appellant testified at trial and indicated that he arrived at the police station at approximately 3:30 p.m., and that he did waive his right to an attorney. (Tr. 115.) Thereafter, Detective Foos told him what R.F. had said and asked appellant if he knew anything about it. (Tr. 116.) Appellant stated that Detective Foos had the case file with him and it contained information concerning the allegations. Appellant stated that Detective Foos showed him these documents. (Tr. 116-117.) Thereafter, appellant indicated that he wrote out the confession and that, when Detective Foos asked him to elaborate on the statements he had already made, that he wrote out the remainder of the confession which had been presented as exhibit B. (Tr. 117-119.) Appellant also testified to the veracity of the recording of his confession which had been played for the jury. (Tr. 119.) Thereafter, appellant was asked why he confessed to raping R.F. when he was now indicating that the event did not occur. Appellant stated as follows: "Unfortunately it seemed like the right thing to do at the time. * * * Maybe I'm not describing it properly, but having not been in trouble with the law before, I did not know what to do in that situation." *Page 5 
(Tr. 119-120.) Thereafter, the following exchange took place between counsel and appellant:
 [Counsel] Let me ask it another way. Did you, in fact, pull out your penis and insert it into [R.F.]'s vagina two or three or four occasions as you indicated to the investigator?
 [Appellant] No, sir, I did not. When he asked me that question I don't know if — well, when we heard the tape I didn't hear it. I actually told him I did not know, and then I just blurted out a number.
 [Counsel] Well, the question is did you, in fact, have sexual intercourse with this child?
 [Appellant] No, sir.
 [Counsel] And that brings up the next question. Why in the world would you admit to having sex with this child in writing and on that tape if it didn't happen?
 [Appellant] For a couple of reasons. The first because again, not having ever been in trouble of any kind, I had no idea what was going on, what was expected of me, what I was to say, and then when I was in the investigation room and was being questioned around the same time that I was writing the statement I actually did have the case file there and it was shown to me, and that is, in fact, where I got these facts from.
(Tr. 120.)
 {¶ 8} In his assignments of error, appellant contends that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.
 {¶ 9} Appellant was found guilty of rape pursuant to R.C. 2907.02, which provides, in pertinent part, as follows:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
 * * * *Page 6 
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 (B) Whoever violates this section is guilty of rape, a felony of the first degree. * * * [I] f the victim under division (A)(1)(b) of this section is less than ten years of age, whoever violates division (A)(1)(b) of this section shall be imprisoned for life.
 * * *
 {¶ 10} "Sexual conduct" is defined in R.C. 2907.01(A), in pertinent part, as follows:
 * * * [V] aginal intercourse between a male and female * * * without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal * * * opening of another. Penetration, however slight, is sufficient to complete vaginal * * * intercourse.
 {¶ 11} When presented with a sufficiency of the evidence argument, this court construes the evidence in favor of the prosecution and determines whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259. According to the state's evidence, R.F. was not appellant's spouse and she was under the age of ten. As to establishing "sexual conduct," R.F. testified that appellant's penis touched her vagina and that it sort of hurt. Further, the state presented both appellant's written confession and videotaped confession wherein he admitted that he had intercourse with R.F.
 {¶ 12} Construed in the state's favor, the above evidence was sufficient to allow the finding beyond a reasonable doubt that appellant had violated R.C. 2907.02. Appellant's first assignment of error is overruled.
 {¶ 13} Appellant also asserts that the verdict is against the manifest weight of the evidence. As the basis for this assignment of error, appellant argues that the record is *Page 7 
noteworthy for what it does not contain. Appellant points out that there is no medical evidence or scientific evidence submitted to substantiate the allegation of rape and that R.F. never testified that appellant actually put his penis inside her vagina. Although appellant does admit that his written and videotaped confessions present additional evidence of his guilt, appellant argues that his out-of-court statements are outweighed by his in court testimony which he asserts showed him to be an "unsophisticated defendant with no experience in the criminal justice system who, by his own account, was overwhelmed by the experience of interrogation." (Appellant's brief, 7.)
 {¶ 14} When presented with the manifest weight argument, this court engages in a limited weighing of the evidence to determine whether the verdict is supported by sufficient, competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt.State v. Thompkins (1997), 78 Ohio St.3d 380. Determinations as to credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 15} In Thompkins, the Supreme Court of Ohio stated as follows:
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. * * * ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").
Id. at 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. *Page 8 
 {¶ 16} Appellant testified that he confessed to raping R.F. because he thought confessing was the right thing to do. No further explanation was provided. Obviously, the jury did not find this explanation to outweigh his written and videotaped confessions and the jury also accepted R.F.'s statements that the act did hurt.
 {¶ 17} In the present case, this court cannot say that the jury clearly lost its way and created such a miscarriage of justice that appellant's conviction must be reversed and a new trial ordered. This court finds that appellant's conviction is not against the manifest weight of the evidence and appellant's second assignment of error is overruled.
 {¶ 18} Based on the foregoing, appellant's assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
P. BRYANT, J. and FRENCH, J., concur.
T. BRYANT, J., retired, of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution *Page 1